Deborah Rosenthal (# 184241)
drosenthal@simmonsfirm.com
**SIMMONS HANLY CONROY LLP**
455 Market Street, Suite 1270
San Francisco, California 94105
Phone: (415) 536-3986
Fax: (415) 537-4120

***Additional Counsel on Signature Page***

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD NADOLNY, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| WELLS FARGO & COMPANY; and WELLS FARGO CLEARING SERVICES, LLC d/b/a WELLS FARGO ADVISORS. | |
| Defendants. | |

Plaintiff, on behalf of himself and the proposed Class and Subclass defined herein, seeks redress for the harm caused by Defendants' conduct. In support of his Complaint, Plaintiff alleges the following:

## I.    NATURE OF ACTION

1.    This case concerns a simple ruse: instead of fulfilling its fiduciary duties, contractual obligations, and a regulatory mandate to act only in the best interests of its clients, Defendants implement a scheme whereby they use their clients' cash balances to generate massive profits for themselves while shortchanging their clients. In 2023 alone, Defendants generated nearly $4 billion in net interest.

2.    Defendants' misconduct was extremely lucrative, but extremely detrimental to their clients—in flagrant violation of their duties to their clients.

## II.    JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction under the Class Action Fairness Act, codified at 28 U.S.C. § 1332(d). Plaintiff is diverse from Defendants and the amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs.

4.    This Court has personal jurisdiction over Defendants because they conduct substantial business in this district.

5.    Venue is proper in this district under 28 U.S.C. § 1391.

## III.    PARTIES

### A.    Plaintiff

6.    Plaintiff Edward Nadolny is a citizen of Hawaii who maintained a retirement account that was managed on an advisory basis with Defendant Wells

Fargo Clearing Services, LLC d/b/a Wells Fargo Advisors ("WFCS"). Mr. Nadolny's WFCS account (ending in 35) was opened in 2021 and was subsequently closed.

7. For the qualified advisory account (ending in 35) that Mr. Nadolny maintained, Wells Fargo was designated as an Investment Advisor. Mr. Nadolny's cash balances in his advisory account were swept into Wells Fargo's Bank Deposit Sweep Program ("BDSP").

**B.    Defendants**

8. Wells Fargo & Company ("WF") is a Delaware corporation with its principal place of business in San Francisco, California.

9. WF is "a leading financial services company that provides a diversified set of banking, investment and mortgage products and services, [including] financial planning, private banking, investment management, and fiduciary services."[1]

10. WF provides financial planning, private banking, investment management, and fiduciary services through an "operating segment" titled "Wealth and Investment Management."[2]

11. Through its wholly owned subsidiaries, WF provides financial consulting, wealth management, and advisory services to Plaintiff and other

---

[1]    Wells Fargo & Company, 2023 Annual Report (Form 10-K) at 1 (Feb. 20, 2023).

[2]    *Id.*

CLASS ACTION COMPLAINT

members of the proposed Class, and it substantially assisted, encouraged, directed, participated in, and received the benefits of the wrongful conduct alleged herein that was conducted primarily by WFCS.

12. WFCS is a Delaware limited liability company with its principal place of business in St. Louis, Missouri.

13. WFCS is a registered broker-dealer and investment adviser with the SEC and is a part of WF's Wealth and Investment Management operating segment.

14. WF owns 75% or more of WFCS and directs the management and policies of the firm.

15. As used herein, the term "Wells Fargo" collectively refers to WF and WFCS.

## IV. FACTUAL ALLEGATIONS

16. Wells Fargo is a "premier financial services firm, serving investors nationwide" that brings "both Wall Street vision and Main Street values to [its] relationship with clients."[3]

17. A significant source of income for Wells Fargo is net interest income. Net interest income is the difference between the amount of interest that Wells Fargo

---

[3]    About Us, available at https://www.wellsfargoadvisors.com/why-wells-fargo/about.htm, (last viewed July 24, 2024).

CLASS ACTION COMPLAINT

pays to or secures for the benefit of its brokerage and advisory clients and the amount of interest that Wells Fargo and its affiliates earn on those cash balances themselves.

18.    Wells Fargo, like many financial services companies, offers "cash sweep" programs to its clients. Cash sweep programs figuratively "sweep" clients' cash balances into interest-bearing accounts at a network of banks.

19.    Wells Fargo makes more money when its clients' funds are invested in the Wells Fargo cash sweep program rather than in similar cash options and equivalents.

20.    When clients are in the Wells Fargo cash sweep program, Wells Fargo pays and/or secures interest rates on the client's cash balances that are neither reasonable nor in compliance with its legal duties.

A.    **Wells Fargo's Bank Deposit Sweep Program**

21.    Wells Fargo has a primary cash sweep program for its brokerage and advisory clients known as its "Expanded Bank Deposit Sweep." According to Wells Fargo,

> The Expanded Bank Deposit Sweep is the primary Cash Sweep Option for eligible clients and consists of interest-bearing deposit accounts at banks both affiliated and unaffiliated with [Wells Fargo] . . . . The Expanded Bank Deposit Sweep makes five Program Banks available.[4]

---

[4]    Cash Sweep Program Disclosure Statement, at p. 2, available at https://www.wellsfargoclearingservicesllc.com/bw/fccs/forms/568205.pdf (last viewed July 25, 2024).

22.    A client may elect the "Standard Bank Deposit Sweep," where a client's cash is deposited only in banks affiliated with Wells Fargo; however, by "entering into an account agreement where the Expanded Bank Deposit Sweep is offered," a client "will be treated as having approved the use of the Expanded Bank Deposit Sweep . . . ."[5]

23.    The Standard Bank Deposit Sweep and Expanded Bank Deposit Sweep programs are referred to collectively herein as Wells Fargo's "Bank Deposit Sweep Program" or "BDSP."

24.    Wells Fargo offers a money market fund cash sweep option, but only "for account types ineligible for either Bank Deposit Sweep Program."[6]

25.    Wells Fargo "assumes no obligation to seek or negotiate interest rates in excess of any reasonable rate of interest the Affiliated Banks are willing to credit,"[7] but it does assume an obligation to secure a reasonable rate of interest for its clients in its BDSP.

26.    Wells Fargo, however, fails to pay to or secure for its clients a reasonable rate of interest on the cash balances in its BDSP.

---

[5]    *Id.*

[6]    *Id.*

[7]    *Id.* at p. 3.

CLASS ACTION COMPLAINT

27.    For example, as of July 25, 2024, the interest rates Wells Fargo paid to or secured for its clients in the BDSP deposits were:[8]

| From | To | Annual Percentage Yield |
|---|---|---|
| $0 | $999,999 | 0.05% |
| $1 million | $1,999,999 | 0.15% |
| $2 million | $9,999,999 | .25% |
| $10 million | and above | .50% |

28.    The interest rates that Wells Fargo paid to or secured for its clients during the period that Mr. Nadolny maintained his account with Wells Fargo were not materially different from those set forth in the preceding paragraph.

29.    The interest rates Wells Fargo pays to or secures for its clients in the BDSP violate Wells Fargo's duties to its clients because the rates are not reasonable, which constitutes a breach of Wells Fargo's fiduciary and contractual duties to its clients and a violation of Regulation Best Interest, 17 CFR § 240.15l-1 (2019) (hereinafter "Reg. BI").

**B.    Wells Fargo's Duties to Its Clients**

30.    Wells Fargo owes varying duties to each client based on the type of relationship it has with the client.  For example:

---

[8]    Bank deposit Sweep Programs, (as of July 24, 2024), available at https://www.wellsfargoadvisors.com/financial-services/account-services/cash-sweep/rates.htm.

a.   for all retail advisory accounts, Wells Fargo is required to act as a fiduciary to its clients, requiring it to only act for the benefit of its clients and not its own self-interest;

b.   for all retail client accounts, Wells Fargo is required to always act in the "best interests" of its clients, regardless of whether the account was qualified (i.e., eligible for certain tax treatment under federal law) or not, or advisory or retail brokerage; and

c.   for all retail retirement accounts, including traditional, Roth, and Simple Individual Retirement Accounts ("IRAs"), Wells Fargo is also contractually obligated to pay its clients a "reasonable rate of interest" on the clients' cash balances.

### 1.   Wells Fargo's Fiduciary Duties

31.   When Wells Fargo acts as an Investment Adviser for actively managed client accounts, it owes its clients a fiduciary duty. *See* Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 CFR § 276 (July 12, 2019) ("Under federal law, an investment adviser is a fiduciary.").

32.   "The Advisers Act establishes a federal fiduciary duty for investment advisers. This fiduciary duty is based on equitable common law principles and is fundamental to advisers' relationships with their clients under the Advisers Act." *Id.*

33.     Under this federal duty, Wells Fargo "must, at all times, serve the best interest of its client and not subordinate its client's interest to its own. In other words, the investment adviser cannot place its own interests ahead of the interests of its client." *Id.*

34.     If there is a conflict between Wells Fargo's interests and its client's interests, then Wells Fargo is also required to "eliminate or make full and fair disclosure of all conflicts of interest which might incline an adviser—consciously or unconsciously—to render advice which is not disinterested such that a client can provide informed consent to the conflict." *Id.*

35.     Wells Fargo "must make full and fair disclosure to its clients of all material facts relating to the advisory relationship." *Id.*

36.     Wells Fargo's fiduciary duties also include a duty of care to carry out its responsibilities in an informed and considered manner and to act as an ordinary prudent person would act in the management of his or her own affairs. In addition, because Wells Fargo becomes a fiduciary on the basis of representations of special skills or expertise, it is under a duty to use those skills and expertise for the benefit of its clients.

CLASS ACTION COMPLAINT

## 2.  Wells Fargo's Duties Under Regulation Best Interest

37.    Where Wells Fargo is not acting as an Investment Adviser and is instead acting in its capacity as a broker-dealer, it is obligated to act in its clients' best interests under Reg. BI.

38.    While the Investment Adviser's fiduciary duty obligations apply to all investment advisory clients, Reg. BI applies only to retail investors, defined as "a natural person, or the legal representative of such person who (i) [r]eceives a recommendation of any securities transaction or investment strategy" and "(ii) [u]ses the recommendation primarily for personal, family, or household purposes." 17 C.F.R. § 240.15l-1(b)(1).

39.    Although there are technical differences between Reg. BI duties and an Investment Adviser's fiduciary obligations, "they generally yield substantially similar results in terms of the ultimate responsibilities owed to retail investors."[9]

40.    Indeed, Reg. BI was drafted "to draw on key principles underlying fiduciary obligations, including those that apply to investment advisers under the Advisers Act, while providing specific requirements to address certain aspects of the relationships between broker-dealers and their retail clients." 84 Fed. Reg. 33318, 33320.

---

[9]    *See* SEC Staff Bulletin: Standards of Conduct for Broker-Dealers and Investment Advisers Care Obligations, available at www.sec.gov/tm/standards-conduct-broker-dealers-and-investment-advisers (last viewed April 23, 2024).

41.    Under Reg. BI, regardless of whether an investor chooses a broker-dealer or an investment adviser (or both), the investor "will be entitled to a recommendation . . . or advice . . . that is in the best interest of the retail investors and that does not place the interests of the firm or the financial professional ahead of the interests of the retail investor." 84 Fed. Reg. 33318, 33321.

42.    Reg. BI consists of a "General Obligation," which states, "When making a recommendation, a broker-dealer must act in the retail customer's best interest and cannot place its own interests ahead of the customer's interests." 84 Fed. Reg. 33318, 33320.

43.    Within the General Obligation are more specific duties, including disclosure duties and a duty to avoid and disclose conflicts of interest.

44.    These latter duties require disclosure of "all material facts relating to conflicts of interest . . . that might incline a broker-dealer to make a recommendation that is not disinterested, including, for example, conflicts associated with proprietary products, payments from third parties, and compensation arrangements." 84 Fed. Reg. 33318, 33321.

45.    Part of a broker-dealer's obligation under Reg. BI is to "consider reasonable alternatives, if any, offered by the broker-dealer in determining whether it has a reasonable basis for making the recommendation." 84 Fed. Reg. 33318, 33321.

46.    One component of a broker-dealer's duty to disclose conflicts of interest concerns compensation. "The receipt of higher compensation for recommending some products rather than others, whether received by the broker-dealer, the associated person, or both, is a fundamental and powerful incentive to favor one product over another." 84 Fed. Reg. 33318, 33364.

47.    Thus, under Reg. BI, Wells Fargo was and is obligated to elevate its clients' interests above its own, to avoid conflicts with clients' interests, and to disclose material facts concerning any conflicts that may exist.

### 3.  Wells Fargo's Duty to Secure Reasonable Interest Rates for Retirement Accounts

48.    For client cash balances maintained in retirement accounts (regardless of whether the accounts are advisory or brokerage in nature), Wells Fargo may utilize those cash balances for investments or loans but only if it pays the client a "reasonable rate" of interest on those cash balances.

49.    For example, section 4975 of the Internal Revenue Code imposes a tax on "prohibited transactions" and applies when a plan sponsor for an IRA engages in transactions with a "disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account." 26 U.S.C. § 4975.

50.    A "disqualified person" includes companies or individuals "providing services to the plan." 26 U.S.C. § 4975(e)(2)(B).

51.    Notwithstanding these "prohibited transactions," the IRS code provides several safe harbors, one of which is "the investment of all or part of a plan's assets in deposits which bear a reasonable interest rate in a bank or similar financial institution." 26 U.S.C. § 4975(d)(4).

52.    Thus, while Wells Fargo is allowed to invest all or part of a client's cash balances maintained in retirement accounts in sweep accounts, those cash balances must "bear a reasonable interest rate." 29 U.S.C. § 4975(d)(4); 26 CFR § 54.4975-6. The objective of this provision is to ensure that related party transactions—i.e., transactions between a plan sponsor (Wells Fargo) and a service provider (the Program Banks)—concerning retirement accounts are priced at fair market rates.

53.    Treasury regulations extend this same obligation to situations when Wells Fargo "invests plan assets in deposits in itself or its affiliates." 26 CFR § 54.5975-6(b)(3)(i). When this occurs, the client's authorization "must name" the institution and "must state that [the bank] may make investments in deposits which bear a reasonable rate of interest in itself (or in an affiliate)." *Id*.

54.    Similarly, and like the IRS Code, ERISA also exempts from prohibition various interested party transactions that "bear a reasonable rate of interest." 29 U.S.C. § 1108(b)(1)(D).

55.    Wells Fargo's client contracts concerning its IRAs incorporate this government-mandated "reasonable rate" minimum requirement.

56.     For example, as part of Wells Fargo's Traditional IRA plan, the client and Wells Fargo agree that "assets of the IRA may be invested in deposits of Wells Fargo Bank, N.A. (or an affiliate) that bear a reasonable rate of interest."[10]

57.     In sum, under the common law fiduciary standard, Reg. BI, and Wells Fargo's own contracts incorporating the federal statutory minimum requirements, Wells Fargo has a duty to act in the best interests of its clients and to secure reasonable interest rates for its clients' cash balances.

## C.     Wells Fargo Breaches Its Duties and Profits Thereby

58.     Wells Fargo breaches its duties to secure reasonable interest rates for its clients' deposits.

59.     Although the term "reasonable" is not defined in Wells Fargo's contracts, according to the term's dictionary definition, it is synonymous with "fair" and "proper."[11]

60.     IRS regulations define an "arm's-length interest rate" as:

> a rate of interest which was charged, or would have been charged, at the time the indebtedness arose, in independent transactions with or between unrelated parties under similar circumstances.

26 CFR § 1.482-2(a)(2).

---

[10]     Wells Fargo Traditional Individual Retirement Account Disclosure Statement and Custodial Agreement, at p. 14.

[11]     *See* Reasonable, Black's Law Dictionary (12th ed.).

61.    In 2003, the Department of Labor issued an exemption to certain transaction restrictions in ERISA and, in granting the exemption, provided the following definition of a "reasonable" rate of interest:

> A "reasonable" rate of interest means a rate of interest determinable by reference to short-term rates available to other clients of the bank, those offered by other banks, those available from money market funds, those applicable to short-term instruments such as repurchase agreements, or by reference to a benchmark such as sovereign short term debt (*e.g.*, in the U.S., treasury bills), all in the jurisdiction where the rate is being evaluated.

68 Fed. Reg. 34646, at 34648 (June 10, 2003).

62.    Wells Fargo did not pay reasonable rates of interest to Plaintiff and proposed Class members.

### 1. Sweep Account Rates Paid by Other Institutions

63.    The rates offered by Wells Fargo through its BDSP are significantly lower than sweep programs at other brokerage and advisory firms. For example, the following chart compares Wells Fargo's BDSP's rates with those of two comparable programs:

CLASS ACTION COMPLAINT

| Cash Balance | Wells Fargo's BDSP Rates[12] | Vanguard Sweep Rate[13] | InteractiveBrokers Sweep Rate[14] |
|---|---|---|---|
| Less than $1 million | 0.05% | 4.6% | 4.83% |
| Between $1 million and $1,999,999 | 0.15% | 4.6% | 4.83% |
| Between $2 million and $9,999,999 | 0.25% | 4.6% | 4.83% |
| $10 million and above | 0.50% | 4.6% | 4.83% |

64.    Thus, other brokerage and advisory financial institutions that use sweep programs pay or secure significantly higher rates than Wells Fargo.

### 2. Money Market Fund Rates

65.    Money market fund rates also provide a benchmark for determining what constitutes a "reasonable rate."

66.    Wells Fargo offers a money market fund for cash sweep, but it only offers that option to public funds and commercial clients.  That option was not available to Plaintiff or the other members of the Class. The money market fund that

---

[12]    Bank deposit Sweep Programs, (as of July 24, 2024), available at https://www.wellsfargoadvisors.com/financial-services/account-services/cash-sweep/rates.htm.

[13]    *See* Vanguard Cash Plus Account, available at https://investor.vanguard.com/accounts-plans/vanguard-cash-plus-account  (last viewed July 25, 2024).

[14]    *See* Safeguard Your Assets with Our Insured Bank Deposit Sweep Program, https://www.interactivebrokers.com/en/accounts/sweep-program.php (last viewed June 20, 2024); Interest Rates, available at https://www.interactivebrokers.com/en/accounts/fees/pricing-interest-rates.php, (last viewed July 25, 2024).

CLASS ACTION COMPLAINT

Wells Fargo offers to public funds and commercial clients pays significantly higher rates than Wells Fargo's BDSP.

67.    Some of Wells Fargo's competitors automatically sweep any uninvested cash deposited into its clients' brokerage accounts into money market funds that earn comparably high rates of interest. For example, by default, Fidelity sweeps uninvested cash in its clients' brokerage accounts into a money market fund currently earning approximately 5%.[15]

68.    The unreasonableness of the rates Wells Fargo pays to or secures for its clients' cash balances is particularly evident in light of the management fees that Wells Fargo charges its clients to "manage" the client cash swept into its BDSP. For example, as noted above, for client cash balances, Wells Fargo secures tiered stages of interest rates that start at 0.05% for all balances under $1 million and never exceed .50%.

69.    In stark contrast, a typical annual management fee that Wells Fargo and its advisors charge on the value of the advisory accounts, which includes the cash balances, would be equal to approximately 1.0%. In this scenario, an investor who maintains up to $999,999 in her sweep account, would only earn 0.05% on her

---

[15]    *See* Help your cash work harder, available at https://www.fidelity.com/go/manage-cash-rising-costs, (last viewed July 25, 2024).

CLASS ACTION COMPLAINT

investment, while her investment advisor takes a 1.0% fee for "managing" that investment.

70.     Wells Fargo has devised a scheme in which Wells Fargo makes significant profits using advisory clients' cash balances, while the advisory clients, to whom a fiduciary duty is owed, *actually lose money on their cash balances*.

### D.    Wells Fargo Benefits from Its Misconduct

71.     In general, Wells Fargo earns interest revenue on non-trading assets that it holds for its clients; this includes cash deposits and other capital that is not deployed for trading purposes.

72.     Wells Fargo "benefit[s] financially from cash balances held in the Bank Deposit Sweep Programs through the 'spread'" banks affiliated with Wells Fargo earn on deposits.[16]

73.     The Program Banks' profitability is significantly impacted "by the difference or 'spread' between the interest they pay on deposits, and the interest" the Program Banks earn.[17]

74.     Wells Fargo receives payments from the Program Banks that are calculated as a percentage of the cash deposited in the BDSP.[18]

---

[16]     Cash Sweep Program Disclosure Statement, at p. 4.

[17]     *Id.*

[18]     *Id.*

75.     Wells Fargo, however, only pays its clients that have deposited cash with the company the negligible yield reflected in its BDSP. The difference between what Wells Fargo earns on the deposits in the BDSP and what it pays its clients is the company's net interest income.

76.     From Program Banks affiliated with Wells Fargo, Wells Fargo can earn interest at a rate up to the Federal Funds Effective Rate plus 30 basis points (0.30%).

77.     The Federal Funds 30-day average effective rate has been over 4.12% since January 1, 2023—and as of July 24, 2024 was 5.33%.[19]

78.     In other words, Wells Fargo can receive up to as much as 5.63% interest on its clients' cash in the BDSP, whereas the clients to whom it owes fiduciary duties receive only .05% for holdings up to a $1 million, and at most .5% for accounts holding more than $10 million.[20]

79.     Much of Wells Fargo's net interest income is generated by its Wealth and Investment Management operating segment—the business unit that provides

---

[19]     Effective Federal Funds Rate, Federal Reserve Bank of New York, available at https://www.newyorkfed.org/markets/reference-rates/effr, (accessed July 25, 2024).

[20]     Wells Fargo's payments from unaffiliated Program Banks may differ depending on whether the account is a retirement account; non-retirement accounts are limited to the same Federal Funds Effective Rate plus 30 basis points (0.30%), but unaffiliated Program Banks holding cash in retirement accounts pays Wells Fargo a uniform fee up to 79% of the Federal Funds Effective Rate. Cash Sweep Program Disclosure Statement, at p. 4.

CLASS ACTION COMPLAINT

investment-related advice and services for customer funds and serves as a broker-dealer for Wells Fargo clients.[21]

80.    Wells Fargo's net revenue is heavily impacted by its net interest income. In the first quarter of 2024 alone, Wells Fargo's Wealth and Investment Management business earned $869 million in net interest income, and in 2023 Wells Fargo earned $3.966 billion in net interest income.[22]

81.    According to Wells Fargo's own analysis, a change in interest rates may cause significant change in the company's net interest income. For example, the table below reflects Wells Fargo's estimated impact in 2024 under different scenarios with a 100 basis points (1.0%) shift.[23]

---

[21]    Wells Fargo & Company, Form 10-Q, at p. 10, (Mar. 31, 2024) available at https://www.wellsfargo.com/assets/pdf/about/investor-relations/sec-filings/2024/first-quarter-10q.pdf.; Annual Report, at p. 21.

[22]    Form 10-Q, at p. 19.

[23]    *Id.* at p. 38.

CLASS ACTION COMPLAINT

**Table 24:** **Net Interest Income Sensitivity Over the Next 12 Months Using Instantaneous Movements**

| ($ in billions) | Mar 31, 2024 | Dec 31, 2023 |
|---|---|---|
| **Parallel shift:** | | |
| +100 bps shift in interest rates | $    1.5 | 1.8 |
| -100 bps shift in interest rates | **(1.9)** | (2.0) |
| **Steeper yield curve:** | | |
| +100 bps shift in long-term interest rates | 1.2 | 1.1 |
| -100 bps shift in short-term interest rates | **(0.7)** | (1.0) |
| **Flatter yield curve:** | | |
| +100 bps shift in short-term interest rates | 0.3 | 0.7 |
| -100 bps shift in long-term interest rates | **(1.2)** | (1.1) |

82.    Thus, under Wells Fargo's own analysis, an interest rate increase of 100 basis points or decrease in 100 basis points means a difference of over one billion dollars of net interest income.

83.    Changes in interest rates also mean that Wells Fargo's clients may decrease their cash deposits. As Wells Fargo has reported, its net interest income decreased in the first quarter of 2024 versus the first quarter of 2023, as a result of lower deposit balances by its clients.[24]

84.    Thus, Wells Fargo has a significant financial interest in (1) not paying clients a reasonable interest rate and keeping as much of the "spread" as it can, and simultaneously (2) not disclosing to its clients the unreasonable interest rates it pays

---

[24]    *Id.* at p. 19.

(as well as the company's inherent conflict of interests), lest the clients pursue accounts with reasonable rates at other institutions.

**E.    Wells Fargo Increased the Rates It Pays to or Secures for Its Clients, But Only After the SEC Began an Investigation into Its Practices**

85.    On September 31, 2023, the SEC disclosed that it began to investigate Wells Fargo over the cash sweep options provided to its advisory clients.[25]

86.    On July 12, 2024, Wells Fargo publicized on an earnings call that it was raising the rates in its BDSP held by advisory brokerage customers and stated that it anticipates that change will reduce its earnings by roughly $350 million.[26]

## V.    CLASS ACTION ALLEGATIONS

87.    Plaintiff re-alleges and incorporates by reference the allegations set forth above.

88.    Plaintiff brings this class action and seeks certification of the following Class:

> **Retail clients of Wells Fargo who had cash deposits or balances in Wells Fargo's BDSP.**

---

[25]    Wells Fargo Faces SEC Investigation Over Cash Sweep Programs, Advisor Hub (Nov. 1, 2023), available at https://www.advisorhub.com/wells-fargo-faces-sec-investigation-over-cash-sweep-programs/.

[26]    Brokerages Boost Cash Sweep Account Rates to Quiet Outflows, Lawsuits, Financial Advisor (July 24, 2024), available at https://www.fa-mag.com/news/brokerages-up-cash-sweep-account-rates-to-quiet-outflows--lawsuits-78914.html?print; Wells Fargo to Lose $350 Million in Revenue as It Raises Rates on Client Cash, Advisor Hub (July 12, 2024), available at https://www.advisorhub.com/wells-fargo-to-lose-350-million-in-revenue-as-it-raises-rates-on-client-cash/.

CLASS ACTION COMPLAINT

89.    Plaintiff also brings this class action and seeks certification of the following Sub-Class (the "IRA Subclass"):

> **Retail clients of Wells Fargo with Traditional IRA or Roth IRA accounts who had cash deposits or balances in Wells Fargo's BDSP.**

90.    Plaintiff reserves the right to amend the Class and IRA Subclass definitions if further investigation and discovery indicates that the Class and IRA Subclass definitions should be narrowed, expanded, or otherwise modified.

91.    Excluded from the Class are governmental entities, institutional and other non-retail investors; Wells Fargo and any of its affiliates, legal representatives, employs, or officers; the judicial officer(s) and any judicial staff overseeing this litigation; and counsel for Plaintiff and the proposed Class, including other attorneys and staff at each respective firm.

92.    This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

**Numerosity**
**Rule 23(a)(1)**

93.    Class members are so numerous that their individual joinder is impracticable. The precise number of Class members and their identities are unknown to Plaintiff at this time. However, Wells Fargo's wealth management

CLASS ACTION COMPLAINT

services provide financial planning and advisory services "nationwide,"[27] managing billions of dollars in client assets. Accordingly, Plaintiff and the Class satisfy the numerosity requirement of Rule 23. Class members may be notified of the pendency of this action by mail, published notice, or other appropriate methods.

### Existence and Predominance of Common Questions of Law and Fact
### Rule 23(a)(2), 23(b)(3)

94.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include the following:

a.   whether Wells Fargo's interest rates are "reasonable";

b.   whether Wells Fargo owed a fiduciary duty to the Class, and whether Wells Fargo violated that duty;

c.   whether Wells Fargo owed a duty to the Class pursuant to Reg. BI, and whether Wells Fargo violated that duty;

d.   whether Wells Fargo owed a duty to the Class related to its IRA programs offered to retail clients (including Wells Fargo's contractually-agreed-to duty), and whether Wells Fargo violated that duty;

---

[27]     *Wells Fargo Advisors: A Premier Investment Firm,* Wells Fargo, available at https://www.wellsfargoadvisors.com/about/firm.htm (last visited July 25, 2024).

e.   whether Wells Fargo breached the contractual terms of its IRA programs;

f.   whether Wells Fargo was unjustly enriched by its wrongful conduct;

g.   whether and to what extent Class members are entitled to damages and other monetary relief; and

h.   whether and to what extent Class members are entitled to attorneys' fees and costs.

### Typicality
### Rule 23(a)(3)

95.   Plaintiff's claims are typical of the Class's claims because they were retail account holders with Wells Fargo who were paid an unreasonable interest rate. Thus, Plaintiff's claims are typical of other Class members' claims as they arise from the same course of conduct by Defendants, and the relief sought is common to Class members.

### Adequacy of Representation
### Rule 23(a)(4)

96.   Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. Plaintiff has no interests adverse or antagonistic to those of the Class.

**Superiority**
**Rule 23(b)(3)**

97.     A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are small compared with the burden and expense required for each Class member to individually litigate their claims against Defendants. It would thus be virtually impossible for Class members, on an individual basis, to obtain effective redress for the wrongs done to them.

98.     Even if Class members could afford individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

99.     Superiority is particularly satisfied in these circumstances, where the law of a single state will apply to all state law claims. Under the uniform contract terms with Wells Fargo, the law of New York will apply to each Class member's state law claims, allowing the Court to adjudicate the claims of all Class members under a single state analysis.

100.    Additionally, the Class may be certified under Rule 23(b)(1) and/or (b)(2) because:

    a.    The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants;

    b.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

    c.    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class members as a whole.

## VI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Breach of Fiduciary Duty
### Brought on behalf of the Class against All Defendants

101.    Plaintiff, on behalf of himself and the Class, hereby re-alleges the paragraphs above as if fully set forth herein.

102.   Under the Investment Advisers Act and at common law, Wells Fargo owed fiduciary duties to Class members who maintained managed accounts within the purview of the Investment Advisers Act.

103.   Under Reg. BI, Wells Fargo owed duties to Class members who maintained non-managed accounts (including IRAs), and those duties are tantamount to fiduciary obligations for the purposes of this litigation.

104.   Wells Fargo's duties include, but are not limited to:

  a.   a duty of undivided loyalty;

  b.   a duty to act in the best interests of its clients;

  c.   a duty of care;

  d.   a duty not to place Wells Fargo's interests above those of its clients;

  e.   a duty to avoid conflicts of interest; and

  f.   a duty to disclose any conflicts of interest.

105.   Wells Fargo violated each of the foregoing duties when it (1) failed to pay the Class a reasonable rate of interest; (2) failed to act in the clients' best interests by not providing a reasonable default for cash balances that paid its clients a reasonable rate of interest on cash balances; (3) placed its own interests in realizing financial gain from net interest income ahead of the Class's interest in obtaining a reasonable rate of interest; (4) maintained and failed to reasonably disclose its

conflict of interest in securing increased net interest income at the expense of its clients.

106.   Wells Fargo's conduct damaged Plaintiff and the Class.

107.   Plaintiff, individually and on behalf of the Class, seeks all damages permitted by law.

### SECOND CLAIM FOR RELIEF
### Unjust Enrichment
### Brought on behalf of the Class against All Defendants

108.   Plaintiff, on behalf of himself and the Class, hereby re-alleges the paragraphs above as if fully set forth herein.

109.   As a result of Wells Fargo's wrongful conduct, Plaintiff and the Class received lower interest payments on their cash and other deposits than they would have in a reasonable and fair market.

110.   As a result of Wells Fargo's wrongful conduct, Wells Fargo was unjustly enriched and Plaintiff and the Class conferred a benefit upon Wells Fargo because it received significantly greater net interest income than it would have but for its wrongful conduct.

111.   Wells Fargo appreciated, knowingly accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the Class.

112.   It would be inequitable and unjust for Wells Fargo to retain these wrongfully obtained profits.

CLASS ACTION COMPLAINT

113.   Wells Fargo's retention of this wrongfully-obtained net interest income would violate the fundamental principles of justice, equity, and good conscience.

114.   Plaintiff and the Class are entitled to restitution and disgorgement of the profits unjustly obtained, plus interest.

### THIRD CLAIM FOR RELIEF
### Breach of Contract—Express Provisions
### Brought on behalf of the IRA Subclass against All Defendants

115.   Plaintiff, on behalf of himself and the IRA Subclass, hereby re-alleges the paragraphs above as if fully set forth herein.

116.   Wells Fargo's governing documents related to its IRAs constitute a valid and binding agreement between Wells Fargo and its IRA accountholders.

117.   The governing documents require Wells Fargo to pay a "reasonable rate of interest" on cash deposits or balances maintained in the IRAs.

118.   Wells Fargo failed to pay a "reasonable rate of interest" on those deposits; therefore, Wells Fargo breached its contracts with Plaintiff.

119.   Wells Fargo's conduct damaged Plaintiff and the IRA Subclass.

120.   Plaintiff, individually and on behalf of the IRA Subclass, seeks all damages permitted by law.

### VII.    DEMAND FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class (including the IRA Subclass), demands judgment and relief as follows:

1. For an order certifying the proposed Class and IRA Subclass, and appointing Plaintiff and his counsel to represent the proposed Class;

2. For an order awarding Plaintiff and Class members damages in an amount to be proven at trial, together with pre-trial and post-trial interest thereon;

3. For an order awarding Plaintiff and Class members restitution, disgorgement, or such other and further relief as the Court deems proper; and

4. For an order awarding Plaintiff and the Class reasonable attorneys' fees and costs of suit, including expert witness fees.

## VIII.    JURY TRIAL DEMAND

Plaintiff, on behalf of himself and the Class (including the IRA Subclass), demand a trial by jury on all issues so triable.

DATED: July 31, 2024

*/s/    Deborah Rosenthal*
Deborah Rosenthal (SBN 184241)
**Simmons Hanly Conroy LLP**
455 Market St., Ste. 1270
San Francisco, CA 94105
Telephone:  415-536-3986
drosenthal@simmonsfirm.com

31

Thomas I. Sheridan, III
Sona R. Shah
**Simmons Hanly Conroy LLP**
112 Madison Avenue
New York, NY 10016
Telephone:   (212) 784-6404
Facsimile:    (212) 213-5949
tsheridan@simmonsfirm.com
sshah@simmonsfirm.com

and

Matthew L. Dameron
Clinton J. Mann
**Williams Dirks Dameron LLC**
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Telephone:   (816) 945-7110
Facsimile:    (816) 945-7118
matt@williamsdirks.com
cmann@williamsdirks.com

and

Bruce D. Oakes
Richard B. Fosher
**Oakes & Fosher, LLC**
1401 Brentwood Boulevard, Suite 250
Saint Louis, Missouri 63144
Telephone:   (314) 804-1412
Facsimile:    (314) 428-7604
boakes@oakesfosher.com
rfosher@oakesfosher.com

***Counsel for Plaintiff and the Proposed Class***

CLASS ACTION COMPLAINT